## MATASSA v. ECONOMY CAB CO. et al.
### No. 4923.

Court of Appeal of Louisiana.
Second Circuit.
Jan. 9, 1935.

Hugh M. Wilkinson, of New Orleans, Chas. L. Mayer, of Shreveport, and A. Miles Coe, of New Orleans, for appellants.

J. V. Thompson, of Alexandria, for appellee.

MILLS, Judge.

In the city court of the city of Alexandria, La., plaintiff obtained judgment for injuries received by being struck by one of its vehicles against the Economy Cab Company and its insurer, Owners' Automobile Insurance Company, of New Orleans, for the sum of $181. From this judgment defendants appealed, and plaintiff has answered asking that the judgment be increased to $275, the amount prayed for.

The 22d day of February, 1934, was, in the city of Alexandria, clear and bright. The sun was shining and the streets dry. At about noon on this day, plaintiff, twenty-three years of age, was riding out Lee street on a bakery truck driven by Sidney Armetta. When the truck reached a point about midway of the tenth block, it stopped on its right-hand side of the street, plaintiff alighted, and, as the truck started on again, walked around behind it on his way to his home on the other side of Lee street. When he had entered the lane of traffic going toward town, he was struck and knocked down by an Economy Cab, driven by its employee, Sidney Fatheree, receiving the minor injuries for which he sues.

The acts of negligence alleged upon by plaintiff are: Excessive speed, failure to warn, and defective brakes.

After denying any negligence on the part of the cab driver, defendants alleged in the alternative that plaintiff was contributorily negligent, in that he failed to keep a proper lookout, and, in the middle of the block, walked around behind the bakery truck into the path of the cab so close to it that the driver could not avoid striking him.

Plaintiff's version of the matter is: "I was going down Lee Street and I caught a ride with Sidney Armetta on the bakery truck, and when we got in front of the place across the street, I got out and he drove off. I walked part of the way across and saw

this car coming, and I stepped up faster and he slammed on his brakes, or at least stepped on his brake, and I was almost across then; and when he let up on his brakes, his car come right at me, and that was when he hit me. He was coming at fast rate of speed and I couldn't make it across."

He further testified that the cab was making 30 to 35 miles per hour. His only eyewitness says it was making 20 or 25 and that plaintiff fell in front of the cab after being struck, with his feet under the radiator, but was not run over.

The account of defendant's driver is: "I was coming down Lee Street towards Red River and I just crossed the railroad and I speeded my machine up to right around 15 miles per hour, and I noticed there was a National bakery truck parked in the middle of Lee Street; the front of the car was covering the back end of another car that was parked on the side of the curb, and just as I got up even with this truck, or about even with it, this truck drove off and Sam Matassa run out in front of me, and when I seen him in front of me he was about three or four feet from the bumper and I slammed on the brakes and at the same time he jumped up in the air and turned completely around, and the way I looked at it, I think the bumper must have hit him while he was in mid-air and it knocked him down and he started rolling toward the curb and I pulled off to the curb and got out and asked what I could do for him, if I could call a doctor, and he told me that he didn't think there was anything to it and his brother, I think, put something on the bruises, I forget what it was."

He says that the railroad crossing about 100 yards from the place of impact was so very rough that he had to slow down materially to cross it. He testifies further that his foot brake was in good order, was applied immediately, and his car stopped within one foot of where plaintiff was hit.

■ We think the fact that plaintiff was not run over and was so slightly hurt strongly corroborates the testimony of defendant that he was traveling slowly, stopped quickly, and that his brakes were in good condition. The legal speed limit on the streets of Alexandria is not shown. It is proven that the brakes on the cab had been relined three days prior to the accident. The emergency brake was disconnected, but it is testified to, and not contradicted, and is in conformance with the experience of modern drivers, that, with the present four-wheel contact, the foot brake is as efficient as the emergency, which is used only when the foot brake is not working or when the car is parked. In any event, the evidence does not disclose any failure to make a prompt stop, and therefore the disconnection of the emergency brake could not have been a proximate cause of the accident.

■ Plaintiff contends that an improper adjustment of the brakes caused the car to swerve toward and hit him. This is not borne out by the preponderance of the testimony. His witness, Jesse Pollitt, agrees with defendant's driver that plaintiff was hit just after he had crossed the car track 10 or 12 feet from the curb. Defendant's driver says that the cab did not swerve from the application of the brakes, but was turned toward the right in an effort to avoid the collision; that he came to a complete stop out in the street, pulling to the curb afterward in an effort to park.

The duty of a person driving an automobile on the street between intersections is laid down in the case of Fernandez v. Montz, 151 La. 299, 91 So. 742, 743, as follows: "Ordinary care and prudence require that a person driving an automobile should exercise the greatest caution when passing street crossings used by pedestrians at street intersections. Pedestrians are bound to use these crossings, and they are of right as much entitled to the use of the street at such crossings as those who drive vehicles. But after the driver of a vehicle has passed the crossings, he is not called upon to exercise the same degree of caution, because, sidewalks being reserved exclusively for the use of pedestrians, he has no reason to expect pedestrians to use the street as a sidewalk." See, also, Millannos v. Fatter, 18 La. App. 708, 138 So. 878.

■ The driver of a vehicle on the streets of a city has no reason to anticipate the presence of pedestrians between intersections, whereas a pedestrian in the same situation has every reason to expect the vehicle. Owens v. Tisdale (La. App.) 153 So. 564.

■■ Without attempting to reconcile the conflicting testimony, we are satisfied that plaintiff had the same opportunity of seeing the cab that its driver had of seeing plaintiff; that the view of each was obstructed by the intervening bakery truck; that the proximate cause of the accident was the negligence of plaintiff in passing behind the bakery truck into the line of the approaching cab so close to it that the driver could not see him in time to give warning or to avoid

striking him; that, confronted with the emergency, the cab driver acted with due promptness and prudence.

For this reason, the judgment appealed from is reversed, and plaintiff's demands rejected, at his cost, in both courts.