GLADNEY, Judge.
This suit was instituted for the recovery of damages sustained by plaintiffs Roy Miller and his wife, Mrs. Lucille Looney Miller. Mrs. Miller’s claim is for personal injuries and the claim of her husband is for damage to his car and for the reimbursement of medical expenses.
Plaintiffs’ petition alleges that on April 10, 1951, at about 2:45 P. M., the petitioner, Mrs. Lucille Looney Miller, alone in the car at the time, was driving her husband’s automobile in a westerly direction along a gravel road known as the Lake Road, approximately four miles south of Sibley, in Webster Parish, Louisiana, when the accident occurred; that she was almost in the act of crossing a T intersection of the Lake Road and a small private road entering the north side of the highway, when a 1948 model Ford truck, owned by defendant and operated by his employee, H. J. Robinson,, was driven into the Lake Road directly in front of her without any signal and without stopping prior to driving onto the Lake Road; and that although she applied her brakes and veered to the left to avoid the collision, the two cars crashed together.
The defendant denied generally the charges of Robinson’s negligence, averring that the driver of the truck stopped prior to entering the Lake Road and noticed the Miller car proceeding down the road a great distance away; that Robinson then entered the highway in low gear but when the truck was approximately two-thirds on the road he saw that Mrs. Miller’s- speed was such that it would be impossible to complete his left turn into the highway; that the driver then came to a complete stop when plaintiffs’ car was approximately 300 yards away and that at this time there were approximately 25 or 30 feet of clear roadway in which plaintiffs’ car could have passed the defendant’s truck without having a collision.
The defendant reconvenes for damages to the truck and for the loss of the use thereof, and has invoked the last clear chance doctrine. He further pleads, in the alternative, the contributory negligence of Mrs. Miller.
After trial there was judgment in favor of Roy W. Miller in the sum of $1,058 and in favor of his wife for $1,250'. From the decree defendant has appealed and appellees have answered the appeal, asking that the award be amended to $1,104 in favor of Mr. Miller and $2,500 in favor of Mrs. Miller.
*727 The accident occurred in the middle of the Lake Road where the private road enters. The Lake Road is a well traveled gravel highway and has a width of approximately 20 feet. The road from which the truck entered the highway is a small private road which does not cross the highway. The smaller road is to a considerable extent concealed from the view of vehicles using the highway because of undergrowth and brush. The Lake Road is the favored road and traffic using said highway enjoys the right-of-way over traffic entering from the north side over the private road.
The drivers of the two vehicles involved were the only eyewitnesses to the accident. Following the accident the positions of the truck and automobile were observed by Roy W. Miller, Clyde Brown, Prentiss Huff and L. M. Wimberly, the latter a state trooper. Numerous photographs were taken while the cars were still in position following the impact.
Mrs. Miller testified that when she first observed the truck she was traveling about 40 to 4'5 miles per hour and that as tha truck entered the highway directly in front of her she was too close to it to do other than to apply her brakes and turn her car slightly to the left. She further testified that at the time of the collision the truck was moving.
The driver of the truck, Robinson, testified that when he stopped his truck before entering the highway he was unable to see the Miller car as his vision was obscured by underbrush. His actions from this point forward are described by him thusly:
“Q. When you stopped the first time, did you look towards the east up the road from which Mrs. Miller was coming? A. No, sir, when I stopped the first time I was behind those bushes. I stopped to put the truck in double low gear.
“Q. You didn’t even look at that time? A. There wasn’t any use to look because you couldn’t see from where I stopped the first time.
“Q. The first time you stopped to look, you were slightly out in the highway; is that right? A. I pulled out to where I could see and when I seen her coming I stopped.
“Q. You mean you couldn’t see up the road, the direction in which Mrs. Miller was coming until you got your truck out into the highway ? A. That is when I seen her.
“Q. That was when you looked; is that right? A. That is when I seen her.
“Q. You hadn’t looked before that time before you entered the highway? A. I have looked.
“Q. When did you look? Where was your truck at the time you looked ? A. The front of it was facing to come up on the road and I looked to the west and then back to the east.
“Q. What did you do when you looked? A. I stopped.
“Q. But you didn’t stop your truck before the front part of your truck was already out into the gravel road? A. That was when I seen her.
“Q. If you had looked just before entering the highway, you could have seen Mrs. Miller, couldn’t you? A. I wouldn’t say.”
Certain photographs were introduced in evidence by the plaintiffs showing the relative positions of the cars following the accident. On one of these exhibits marked “Plaintiff-13” the two vehicles involved in the accident are shown and a third vehicle, a truck, is in a still position just prior to entering the highway. This photograph was taken some distance to the east from the scene of the accident and clearly shows that had the driver of the truck looked to the east before entering the road he would have seen Mrs. Miller a considerable distance away. This fact alone is persuasive of the fact that Robinson entered the highway without bringing his truck to> a complete stop and making sure that he could safely enter the highway. Upon examination he verified the positions of the vehicles shown in the photographs.
Mr. Wimberly, the state trooper, testified that he observed skid marks made by the Miller car extending from a point *728 five feet from the north edge of the Lake Road a distance of 20 feet to the point of impact, which clearly shows that Mrs. Miller applied her brakes and turned her car to the left, inasmuch as the impact occurred near the center of the road. The photographs further show that the right front fender of the Miller car and the left front fender of the truck first came together. The physical evidence, therefore, absolves Mrs. Miller from blame.
It is true that appellant alleges in his answer that Robinson drove onto the road and came to a stop when. Mrs. Miller was 300 yards away and that he left 25 to 30 feet of clear roadway in front of the truck. It is most unreasonable to believe that this could be true. Certainly, if Mrs. Miller saw the truck standing still 900 feet in front of her she would not have run into it. The evidence preponderates that the width of the highway was only 20 feet. From the foregoing findings we unhesitatingly reach the conclusion that Mrs. Miller was not in any wise negligent but was the unfortunate victim of a collision resulting from the driver of the truck entering the main highway without stopping and making sure that he could do so without danger. This action of the driver of the truck was clearly in violation of the Highway Regulatory Act, LSA-R.S. 32:237, subd. E, which requires that the driver of a vehicle entering the public highway from a private road, or entering a private road from a public highway, shall yield the right-of-way to all vehicles approaching on the public highway. See: Belden v. Roberts, 1926, 3 La.App. 338; Buckner v. Powers, 1930, 12 La.App. 630, 125 So. 744; Payne v. Prestridge, 1931, 16 La.App. 479, 133 So. 512; Smith’s Tutorship v. Perrin, La.App.1933, 145 So. 685; Joseph Chalona Company v. Smith, La.App. 1935, 158 So. 237; Anderson v. Louisiana Power and Light Company, La.App. 1938, 180 So. 243; Hochenedel v. Heard, La.App. 1939, 188 So. 413; Austin v. Baker-Lawhon & Ford, La.App.1939, 188 So. 416, followed in Standard Gin & Mfg. Co. v. Baker-Lawhon & Ford, La.App., 188 So. 420; Employers Casualty Co. v. Baker-Lawhon & Ford, La.App., 188 So. 421; Smith v. Jackson, La.App. 1940, 198 So. 174; Olano v. Leathers, La.App. 1941, 2 So.2d 486; Harrell v. Goodwin, La.App.1948, 32 So.2d 758; Hair v. Lee, La.App.1949, 38 So.2d 543; Flowers v. Indemnity Insurance Company of North America, La.App.1949, 42 So.2d 132, adhered to, La.App., 46 So.2d 776.
As a result of our findings as set forth above there is no merit to the pleas that Mrs. Miller had the last clear chance to avert the collision and that she was guilty of contributory negligence.
Plaintiff, Roy W. Miller, has asked that damages to the car be increased from the sum of $1,058 awarded by the judgment, to the sum of $1,070. The car was almost completely destroyed and its value after the accident was $200. Counsel for appellees say that the value of the automobile prior to the accident was $1,215, plus accessories of $30 for the radio and $25 for the heater, or a total of $1,270. We assume the judge a quo awarded the sum of $1,004 as the value of the car damage inasmuch as the testimony indicates Miller was also entitled to the medical bill of $34 and a doctor’s bill of $20. The testimony in support of the second-hand value of the radio and heater is vague and uncertain and does not furnish a basis for increasing the judgment in this respect. We are, therefore, of the opinion that the award made by the trial judge in favor of R. W. Miller was adequate and correct.
As to Mrs. Miller’s injuries it is apparent that she suffered considerable shock following the accident, requiring her hospitalization for two days. Concerning her injuries she testified that she hurt all over, had injuries to her chest, both knees, both arms and to her nose and chin. After leaving the hospital she was confined to bed for a few days after which she was able to go up and down the steps and get around with some difficulty. She suffered numbness of one hand and had trouble with her right arm and shoulder, and as a consequence of these injuries she was not able to do all of her housework as formerly. Dr. B. L. Cook testified that when he saw her on the afternoon following the accident Mrs. Miller was in a state of shock and complaining of a severe pain in her chest. There was *729 a bruise in the middle of her chest and also pain in her shoulder. X-rays negatived any sign of fractures. She was treated for physical and mental shock for about 48 hours, then allowed to go home, after which he saw her once or twice. There is no evidence that she suffered any disabilities of a permanent nature, other than shock and bruises and soreness. Mrs. Miller apparently suffered no serious injuries and we are of the opinion that the amount awarded is somewhat excessive.
It is difficult to determine a proper award of damages in view of the change in the purchasing power of the dollar which has occurred within the past decade. We had occasion to discuss this subject in Scott v. Claiborne Electric Co-operative, Inc., La.App.1943, 13 So.2d 524, and in Weadock v. Eagle Indemnity Company, La.App.1943, 15 So.2d 132.
In Trahan v. Lantier, La.App.1947, 33 So.2d 136, plaintiff received a two-inch cut on the scalp from which blood flowed rather freely. He received bruises, multiple cuts from hand to elbow, an injured shoulder and swollen hand, requiring his arm to be in a sling for two weeks and was disabled so as to prevent him from working for 30 days. The sum of $450 was held to be a reasonable reward.
In Kopcso v. Alello, La.App.1947, 32 So.2d 99, Mrs. Mary Kopcso was awarded the sum of $750. The evidence showed that she suffered several painful bruises and lacerations as well as three fractured ribs and that she had pain almost continuously for two or three months and that even at the time of the trial she still had some nervous reaction to her experience. The court held this award was reasonable.
In Richey v. Service Dry Cleaners, La.App.1946, 28 So.2d 284, this court held that $850, as awarded by the trial court, was inadequate and increased the award to $1,-500. Therein Mrs. Richey was by the impact of the collision thrown violently against the back of the front seat, rebounded against the back seat, and fell to the floor in a semi-conscious condition. She was removed to the hospital complaining of pain in her back and chest. On her third day in the hospital she was worse and coughed up blood. She was hospitalized a great portion of the time from December 16th to January 9th, at which latter date she was suffering from acute gastritis and colitis more or less due to her extreme nervous condition. She was again admitted to the hospital on January 27th, complaining of nervousness and soreness over the abdomen, and remained there until February 13th.
Experience teaches us that the extent of injury to a person involved in an accident varies greatly and court decisions furnish, at best, a general pattern. The foregoing citations do show, we believe, that the amount awarded Mrs. Miller is excessive and should be reduced to $750.
The judgment appealed from is amended by reducing the award in favor of Mrs. Lucille Looney Miller to the sum of $750 and, as so amended is affirmed. The judgment in favor of R. W. Miller is affirmed. Appellant is taxed with costs of both courts.
McINNIS, J., recused.